## Rheem *versus* Carlisle Deposit Bank.

1. The plaintiff, a bank in Carlisle, was the holder of a draft payable in Philadelphia, endorsed by defendant; notice of protest was duly received by the bank on Saturday; on that day an officer of the bank called at defendant's house and place of business to serve notice personally, but could not meet him. On Sunday he called at defendant's house and handed him a sealed envelope containing the notice, saying what it contained; defendant put it unopened into a drawer, and did not look at it for some weeks afterwards. *Held,* That the service of the notice being on Sunday was unlawful and the endorser was not bound.

2. The defendant was not bound to receive the notice nor to open or read it on Monday, although the service would then have been in time.

3. Receiving the notice on Sunday in silence was not a waiver of the irregularity.

4. Stern's Appeal, 14 P. F. Smith 447, remarked on.

May 12th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Cumberland county:* No. 20, Of May Term 1874.

This was an action of assumpsit, brought March 9th 1871, by the Carlisle Deposit Bank against Jacob Rheem, endorser of the following draft, of which the plaintiff was the holder:—

"$1200.                          Philadelphia, November 17th 1870.

Forty days after date pay to the order of myself at the Union Banking Company, Philadelphia, twelve hundred dollars, value received, charge the same to account of          WM. LEEDS.

Union Drove Yard, West Philadelphia.

Accepted—Henry Glass.

Endorsed by William Leeds, Jacob Thudium, William Leeds, Jacob Rheem.

The defendant filed an affidavit of defence, that "he never received proper and legal notice of the dishonor of the instrument on which this suit is brought so as to charge him with the same."

On the trial, April 25th 1873, before Junkin, P. J., it appeared that the note had been protested for non-payment, December 30th 1870, at the Union Banking Company.

Lewis A. Smith, a teller of plaintiff, testified:—

"I received notice of the protest of this draft on 31st of De-

cember 1870. There were four notices of protest in the letter from Brobston, the notary, to wit: One to J. P. Hassler, cashier, one to William Leeds, one to Jacob Thudium, one to Jacob Rheem, and we retained the notice to J. P. Hassler, and the notice to William Leeds I left with his wife at his residence. The notice to Jacob Thudium I served in person, and the notice to Jacob Rheem, I called several times at his residence and at his office, which is his place of business, and was unable to find him. These calls at his house and place of business, were made on Saturday afternoon and evening, of the 31st December 1870. Then on Sunday January 1st 1871, I served the notice of this protest, which I had previously attempted to serve, about 9 o'clock, A. M., at the residence of Mr. Rheem, by handing it to him in person. Rheem's daughter came to the door first, and I asked for Mr. Rheem, and then he came."

For defence, Jacob Rheem, defendant, testified:—

"When Mr. Smith called on Sunday, January 1st 1871, I was engaged at family worship. I went to the door after worship was over, and Mr. Smith handed me the paper, and stated that he was sorry, that he was obliged to do it. I took the paper from his hand and went back to the dining-room, and threw it into the drawer of my desk. I did not look at its contents, nor did I for some weeks afterwards, and then only inadvertently, while looking for other papers. He did not tell me what the notice was when he handed it to me."

Lewis A. Smith, recalled for plaintiff, testified:—

"The paper containing notice was in a sealed envelope. I said or told Rheem when I handed him the envelope, that I was very sorry, that I was compelled to serve it on him, and told him it was the notice of the protest of the Leeds draft."

The court charged:—

"We instruct you, that [if you find from the evidence that Mr. Smith, the teller of the plaintiff's bank, told Rheem, the defendant, when he handed him the notice of the protest on Sunday, the 1st day of January 1871, that it was the notice of the protest of the Leeds draft, the plaintiff is entitled to recover.]

"If you find that Smith, the teller, did not tell the defendant, Rheem, when he handed him the envelope, that it contained notice of the protest of the Leeds draft, you will find a verdict for the defendant.

"The court reserves the following point, to wit: Should the jury find for the plaintiff the fact that Smith, the teller, did tell defendant Rheem, on Sunday, the 1st day of January 1871, that the envelope which he then and there (on that Sunday) handed to defendant, contained notice of the protest of the Leeds draft, then the following facts are ascertained, to wit:—

"First. That defendant endorsed the draft in suit.

[Rheem *v.* Carlisle Deposit Bank.]

"Second. That it was presented for payment to Henry Glass, the acceptor, on 30th December 1870, who refused payment; that payment was on same day demanded at the counter of the Union Banking Company, Philadelphia, where by its terms it was payable, and payment refused there also.

"Third. That it was duly protested for non-payment on Friday, the 30th December 1870, but the notary instead of mailing the protest to the address of the defendant, Rheem, at Carlisle, Pa., his place of residence, enclosed said notice in an envelope and mailed it on 31st December 1870, to plaintiff as last endorser, and it was received by plaintiff same day at its place of business in Carlisle, Pa., aforesaid; that the same evening (31st December 1870), Smith, an officer of plaintiff's bank, attempted to serve the said notice of protest on defendant, but failed, because he did not find defendant at his usual place of business.

"Fourth. That on Sunday, the 1st January 1871, the said officer, Smith, went to the dwelling-house of defendant, and handed him the envelope containing the notice of the protest of said draft, telling him at the moment of so doing that the envelope contained notice of the protest of the Leeds draft."

The question reserved is : "As plaintiff had by law Monday, the 2d January 1871, to give this notice of protest to defendant, was the delivery of the envelope in the manner set forth, *on Sunday*, sufficient to charge the endorser ?"

The verdict was for the plaintiff for $1367.

In his opinion on the reserved point, Judge Junkin said :—

* * * "Notice of protest is authentic information from the proper source that the paper has been dishonored ; its object is to enable the party notified to take measures for his own security against parties liable to him. It need not be in writing—any information coming from parties interested, and whose duty it is to give it, and certain to a reasonable intent, will suffice. When the endorser lives elsewhere than at the place fixed for payment, notice by mail may be given. It may be given verbally and personally, or in writing, and left at his place of business or dwelling. If it can be shown that it was *actually* received by the endorser in due time, when in writing, there is no difficulty ; but when this cannot be done, then rules have been established, which if complied with, are considered equivalent to notice, although notice may never have reached him. Actual notice dispenses with the ordinary formal requirements : Hallowell & Co. *v.* Curry *et al.*, 5 Wright 322. In Bank of U. S. *v.* Corcoran, 2 Peters 132, and Dickins *v.* Beal, 10 Id. 578, it was held that though left at an *improper* place, nevertheless if in point of fact it was *received* in due time by the endorser, it was sufficient in point of law to charge him ; so that, after all, the question is, did he *know* certainly, and from proper sources, that the particular draft was dishonored.

[Rheem *v.* Carlisle Deposit Bank.]

" Can the day on which, or the channel through which the knowledge comes, whether written or spoken, be material?   Could a purchaser, who had received notice of a trust, on *Sunday*, written or spoken, say, he knew it not, on account of the day, and therefore be discharged?   Now, it is found as a fact, that the teller told him that the envelope contained notice of the protest of the Leeds draft.   He had knowledge of the fact, both verbally and in writing.   That under our Sunday law, all contracts made on that day are to be considered as not made at all, is conceded, and had the 1st January 1871 (Sunday) been the last day the plaintiff had for giving this notice, it would have amounted to nothing, for he was not bound to open it on Sunday, and the authorities say it is to be considered as received on Monday : Parsons on Notes and Bills, ed. of 1873, p. 515, vol. 1, and he cites Wright *v.* Shawcross, 2 B. & Ald. 501, note ;  Bray *v.* Hawden, 5 Maule & S. 68 ; Diblieux *v.* Bullard, 1 Rob. (La.) 66, where the notice was given on the 4th July.   Martin, J., said it might be given on Sunday. ' If a holiday or Sunday intervenes it is not counted, but adds one more day of allowable delay.   If notice is received on Saturday it need not be forwarded until by some mail on Monday, even if there is a Sunday mail.'   Then plaintiff had Monday, the 2d January 1871, to give the notice, and inasmuch as defendant was in possession of the envelope containing said notice (and was told so by the teller) on that Monday, he was duly notified that the draft was protested.   Had a post-carrier delivered the envelope on Sunday it would suffice ; but then that would be good on the ground that it was duly posted, and he bound, though he never received it.   Nor do we rest our conclusions on the ground that he might have declined receiving the letter, and by receiving waived irregularity, because the statute was not his to waive.   But we place his liability solely on the ground that on Monday, the 2d day of January 1871, that day being in good time, he had in his possession a notice of the protest of the draft in suit, and knew that he had it.   Had the envelope fallen from the clouds, or been carried to him in the mouth of a fish, like the tribute for Cæsar, with the direct information from the teller of the bank, plaintiff, ' this is the notice of the protest of the Leeds draft,' he would have been fixed for the money, because the whole purpose of the notice is to inform him of non-payment.

" The statute does not forbid talking or writing on Sunday, and a fact communicated on that day is as much the truth as it would be spoken on any other.   In Barker *v.* Hopkins, 7 Barr 472, a bond void because executed on Sunday, was used as an *admission* of liability, and Coulter, J., there says, a man may acknowledge the truth on Sunday, and he knew of no rule preventing its being given in evidence against him ; that if a man writes a letter on Sunday, and sends it to his creditor, who gets it on Monday, or

[Rheem *v.* Carlisle Deposit Bank.]

even takes it from the office on Sunday, he presumes that it would be competent evidence against the debtor. He further adds, "We cannot carry the law so far as to say, that the admission of a previously existing debt, made on the Sabbath, is not good." And in Uhler *v.* Applegate, 2 Casey 140, it was held that an agreement though made on Sunday, and void as an executory contract or agreement, yet the payment of the money afterwards, and its receipt by the obligee, constituted a new contract, which was binding on the parties. Defendant was not bound to open and read the notice on that Sunday; the law gave him until Tuesday, the 3d January 1871, to notify the parties to whom he would look for indemnity; but being in *possession* of the notice on Monday was all the law required, and how he came by it is not material, so that he had it. We are not unmindful of Stern's Appeal, 14 Smith 447, where it was held that an order to the sheriff, given verbally on Sunday, to resume action on a suspended execution, did not create a lien on the defendant's goods nor give precedence; and that the sheriff was not bound to receive such order on Sunday, for if he was, then he must keep his office open on that day. It is enough to observe that this order required the sheriff to *act*, and this he was not bound to do on Sunday. But had a written order been handed him on Sunday, which was in his hands on Monday following, and he knew its purport from the person handing it, could he have said that he was not bound to act? How he came by it, if he had it on Monday, would not be material."

The court directed judgment to be entered for the plaintiff on the verdict on the reserved point.

The defendant removed the record to the Supreme Court by writ of error.

He assigned for error the part of the charge in brackets and entering judgment for the plaintiff on the verdict on the reserved point.

*L. Todd*, for the plaintiff in error.—The holder must show by clear and satisfactory proof that demand and notice had been made: Lawson *v.* Farmers' Bank, 1 Ohio Rep. 206. The law will not lend its aid to enforce a contract made on the Sabbath: Foreman *v.* Ahl, 5 P. F. Smith 325. A notice on the Sabbath is a nullity: Stern's Appeal, 14 P. F. Smith 447.

*J. Hays* and *R. M. Henderson*, for defendant in error.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 25th 1874.

It is very important that the Acts of Assembly providing for the observance of the Lord's day, commonly called Sunday, should be enforced according to their true spirit and meaning. We are

[Rheem v. Carlisle Deposit Bank.]

not called upon to discuss the policy of these statutes, but the legislature in the unquestionable exercise of their constitutional power have enacted that one day in seven, the first day of the week, shall be a day of rest, when all worldly employment and business shall be intermitted. By the Act of 1705, § 4, 1 Smith 25, no person or persons upon the first day of the week shall serve or execute or cause to be served or executed any writ, precept, warrant, order, judgment or decree, except in case of treason, felony or breach of the peace; but the serving of any such writ, precept, warrant, order, judgment or decree shall be void to all intents and purposes whatever. And the Act of April 22d 1794, § 1, 3 Smith 177, imposes a penalty upon any person who shall do or perform any worldly employment or business whatever on the Lord's day, commonly called Sunday (works of necessity and charity excepted). It was said in Stern's Appeal, 14 P. F. Smith 450, that judicial business in civil cases, done on Sunday, is violative of the common law. The notice from the attorney of the party to the sheriff in that case was not an order within the letter of the Act of 1705, though it is so termed in the case. It was a mere notice to him to proceed according to his duty under the writ of execution already in his hands. It cannot, I think, be doubted that any other notice by party or counsel in the course of legal proceedings would be equally ineffectual. Nor would it be necessary that a suit should be actually pending. Notices are often required to fix the liability of a party. Thus notice to a magistrate before commencing a suit against him for any act done by him in virtue of his office surely could not be served upon him on Sunday. Nor would it matter that it would have been in time if served on the following day. To fix an endorser with legal liability, a notice of non-payment is required. It is a step in the legal proceedings, though before the commencement of the suit. The party was not bound to receive or notice such a communication. It is against the spirit of the Act of 1705, to permit it to have any effect. Besides it was a part of the worldly employment or business of the teller of the bank, directly violative of the Act of 1794, an unlawful act on his part, and fell within the prohibition of that statute.

It is true that the English authorities hold that a notice of protest served on Sunday is to be considered as received on Monday: Byles on Bills 224. But our Act of Assembly is more comprehensive in its terms than the English statute of 29 Charles 2, cap. 7, which forbids only labor in one's "ordinary calling on Sunday," whereas the statute of 1794 is aimed against "any worldly employment or business whatever:" Johnston v. The Commonwealth, 10 Harris 108; Omit v. The Commonwealth, 9 Id. 432; Kepner v. Keefer, 6 Watts 233. If the plaintiff in error was not bound to receive the notice on Sunday, neither was he bound to open and read it on Monday. He said nothing to lull

[Rheem *v.* Carlisle Deposit Bank.]

the officer of the bank into security. The mere taking of the notice from his hands in silence, though informed of what it was, cannot be construed into an agreement to accept it and a waiver of the irregularity. We must be careful not to open the door to exceptions which will fritter away the plain provisions of the law. Especially is it in the construction of written statutes that hard cases have made bad precedents. Thus we have seen the Statute of Uses, of Frauds and Perjuries, and of Limitations, almost judicially repealed, by exceptions gradually introduced by construction. In such cases it is a safe rule, *obsta principiis*.

Judgment reversed, and a *venire facias de novo* awarded.