## New Castle v. Casacchia

*Robert White*, for City of New Castle.

*Alvah M. Shumaker* and *Edwin K. Logan*, for defendant.

BRAHAM, P. J., November 27, 1946.—This case is before the court en banc upon certiorari to John F. Haven, mayor of the City of New Castle. The record

brought up discloses a conviction and sentence for the offenses of disorderly conduct and resisting an officer contrary to certain ordinances of the city. Defendant has filed 13 exceptions to this record, the substance of which may be summarized in four general objections: First, the arrest, trial and sentence of defendant occurred on Sunday; second, the arrest was upon view and no information charging any offense was ever filed; third, none of the witnesses at the hearing were sworn; and fourth, the record which has been returned to court was not made up contemporaneously with the events which are recorded but after the certiorari was served. These objections may be considered separately after briefly stating the background of facts and law.

An ordinance of the City of New Castle of September 27, 1892, prohibits disorderly conduct in any street, breaches of the peace, riotous conduct and imposes a maximum fine of $50. Section 9 of the ordinance makes it "the duty of the police to arrest any person . . . whom they may see . . . committing any of the offenses . . ., and the person shall be forthwith taken before the Mayor for a hearing or may be committed until a hearing can be had, saving the right of the accused to a speedy hearing and the right to give bail for his appearance". Section 2005 of The Third Class City Law of June 23, 1931, P. L. 932, 53 PS §12198-2005, allows policemen to arrest without warrant and upon view persons guilty of disorderly or riotous conduct, breaches of the peace or violating any city ordinance for which a fine or penalty is imposed.

On Sunday, June 23, 1946, at about 1 a. m., defendant, Angelo Casacchia, was arrested on view by Officer Victor Cubellis, who charged him with disorderly conduct and resisting an officer. He was taken to the office of the police department where he posted a forfeit for his appearance before the mayor at 9 a. m. of the same day. At 9 a. m. he appeared before the mayor and de-

nied the charges. No information was ever filed against him. The mayor then heard the statements of the officer and of defendant. Neither was placed under oath. The officer said that while he was trying doors to make sure they were locked, defendant came out, became violent and abusive and when the officer tried to quiet him defendant and his companions tried to take the officer's stick from him. The recital of the evidence in the transcript concludes: "The material facts as attested by the officer were not denied by defendant". This transcript, however, was not made up until long afterwards. The mayor, on June 23, 1946, found the defendant guilty of disorderly conduct and resisting an officer, in violation of the ordinance quoted above, and fined him $50 which sum defendant paid.

Was it lawful for the mayor to hold court on Sunday and is a sentence imposed on that day valid? Contrary to the general belief, in very ancient times courts were kept open on Sundays in Christian countries. This is pointed out by Justice Huston in Huidekoper v. Cotton, 3 Watts 56, 59:

Sunday was made dies non juridicus in 517 A. D. by a canon of the church. This was adopted by the Saxon kings of England, confirmed by William the Conqueror and Henry II and became recognized and established as such at the common law: 25 R. C. L. 1444.

By the time of Lord Coke he was able to say in I Institutes 364: "At the common law there be dies juridici and dies non-juridici and that the Sabbath is not a judicial day".

The common-law rule forbidding sessions of court on Sunday is everywhere adopted by the text writers as is the distinction between ministerial acts, such as discharging a jury, and judicial acts, such as imposing sentence. The general rules are well stated in 50 Am. Jur. 858, as follows:

"While in the absence of statute a ministerial act in connection with judicial proceedings and, according to many cases, quasi-judicial acts, such as the issuance and service of process, performed on Sunday are valid, it is the general rule of the common law that all judicial proceedings which take place on Sunday and all judicial acts performed on that day are void, irrespective of any statutory declaration to that effect. . . .

"Under the rule that Sunday is dies non juridicus and judicial acts performed on that day are void, an order made by a judge on Sunday is void. The holding of court on Sunday is likewise interdicted, and judicial acts performed at a session of court held on that day are void. Thus, a jury cannot be charged and the case submitted to them on Sunday. Charging the jury is a judicial, as distinguished from a ministerial act, and on principle cannot be done on a non-juridical day. Likewise, a valid judgment cannot be rendered nor a sentence pronounced on Sunday, unless authorized by statute."

In support of this statement are found the other well known encyclopedias: 25 R. C. L. 1445; 60 C. J. 1135; 37 Cyc. 588.

It is our problem to determine whether these general principles are accepted under our law. Our statutes indicate our acceptance of Sunday as a day non-juridici. The Sunday Law of 1705, 1 Sm. L. 25, sec. 4, 44 PS §1, forbids the service of any writ or decree on Sunday except in case of treason, felony or breach of the peace. The Act of April 22, 1794, sec. 1, 3 Sm. L. 177, reënacted by the Act of June 24, 1939, P. L. 874, sec. 699.4, forbids any worldly business or employment on Sunday excepting works of necessity or charity. The Act of May 31, 1893, P. L. 188 as last amended by the Act of May 7, 1937, P. L. 601, 44 PS §11, provides that as to commercial paper the holidays established by law shall be like Sunday. Sparhawk v. The

Union Passenger Railway Co., 54 Pa. 401, is perhaps our most famous case.

Section 1211 of The Vehicle Code of May 1, 1929, P. L. 905, as last amended by the Act of June 27, 1939, P. L. 1135, 75 PS §741, illustrates our point most clearly. Pennsylvania State policemen in uniform are thereby authorized to arrest all violators of the act on view on any day including Sunday. They are further directed to take offenders before the nearest available magistrate who is directed to give each defendant an immediate hearing unless the arrest was on Sunday. On Sunday no hearing may be had but defendant may be admitted to bail.

The rule in our Commonwealth as to Sunday in the civil courts is stated in Stern's Appeal, 64 Pa. 447, 450, as follows:

"Judicial business in civil cases, done on Sunday, is violative of the rule of the common law and our statutes, which in fact are declarative of the common law. This is sustained by all our decisions on the subject of Sunday, and they need not now be cited more specially."

Rheem v. Carlisle Deposit Bank, 76 Pa. 132, 137, Commonwealth ex rel. v. Kelly, 250 Pa. 18, and Kauffman's Appeal, 70 Pa. 261, support the same principle.

When we approach our problem more closely to determine whether a session of court may be held on Sunday and a defendant found guilty and sentenced on that day, we must first observe the examples of the distinction between merely ministerial acts and those which are truly judicial. In Huidekoper v. Cotton, 3 Watts 56, the illegality of performing judicial acts on Sunday was approved but the mere reception of a verdict on Sunday was held to be a proper ministerial act. The reason for this rule, based as it is on reasonable necessity, is explained by Mr. Justice Lynn in Commonwealth v. Nixon, 94 Pa. Superior Ct. 333. Bail

may be taken on Sunday: Commonwealth v. McEntee, 22 D. & C. 376; Commonwealth ex rel. v. Curry, 48 Pa. C. C. 16. The Act of March 24, 1937, P. L. 105, 19 PS §58, now allows the taking of bail on Sunday. A jury may be discharged on Sunday: Commonwealth v. Nixon, 94 Pa. Superior Ct. 333, 343.

When it comes, however, to the weightier matters of hearing evidence, pronouncing judgment and imposing sentence on Sunday the better opinion in this State supports the almost universally accepted conclusion that such proceedings are void. The dearth of precedents on the point arises from the universality of this opinion. In Commonwealth v. Conlin, 28 Montg. 209, the information was lodged, hearing held and sentence imposed all on Sunday. Upon certiorari defendant was discharged, the court pointing out that even the arrest was bad because not for a breach of the peace or other exception under the Act of 1705. In Commonwealth v. Breitinger, 40 Pa. C. C. 617, the hearing was held on Sunday and the conviction reversed although the court relied more upon the failure to show a violation of the Sunday laws. Commonwealth v. Marra et al., 8 Phila. 440, 447, although involving the reception of a verdict on Sunday, affirms the general principle that no truly judicial act may in this State be done on Sunday. In Wanner v. Danner, 38 Lanc. 82, a justice of the peace who issued a warrant of arrest on Saturday, but received defendant from the constable and committed him on Sunday was held liable in damages. In Commonwealth v. Skula, 41 D. & C. 309, it was held that although a State policeman may arrest for violation of The Vehicle Code on Sunday, the hearing may not be held on that day.

In the present case the city relies upon Commonwealth v. Hendley, 5 D. & C. 716, to sustain its conviction. There defendant was arrested on Sunday,

whether on view or not does not appear. He was given a hearing on the same day and bound over to court. The opinion concludes, "as to all offenses for which an arrest may be made on Sunday, a hearing may also be had". In Commonwealth v. Overton et al., 17 Luzerne 253, a variation of this view appears, the court holding that, as to selling liquor, keeping a disorderly house and keeping a gambling house information might be made and hearing held on the same Sunday, provided the offense was a fresh one. The same ruling was made in Commonwealth v. Overton et al., 42 Pa. C. C. 446. It should be noted, however, as to the two cases last cited that in each case the court was concerned with the problem of an information and arrest before the defendant got away. In neither was there a reason given for having a hearing on Sunday.

With the rule stated in Commonwealth v. Hendley, supra, we are unable to agree. It does not follow that the right to make an arrest on Sunday gives the right to trial on Sunday. The right to arrest is ministerial; the English Statute of 29 Charles II c. 7 was necessary to prohibit arrests on Sunday and our Act of 1705 is a reënactment of the English statute: Commonwealth v. Marra et al., 8 Phila. 440, 447. But to hold a hearing is a judicial function, always forbidden, not by statute —because there is no statute, English or Pennsylvanian, which forbids it,—but at common law as a matter of public policy.

There is no sound reason for requiring or allowing a hearing on Sunday although the arrest may have been made without warrant and on Sunday. The Act of May 23, 1923, P. L. 339, 19 PS §75, provides that where the police of a city or borough arrest any person on view for the violation of an ordinance and no immediate hearing can be had, the mayor, burgess or the "proper police official in charge of any police station to which said person is taken" may accept a sum of

money not exceeding the appropriate fine as a forfeit for the appearance of defendant before the mayor or burgess. The City of New Castle in the present case availed itself of this provision; the Mayor's transcript states that at 1 a. m. on June 23, 1946, which was Sunday, defendant was brought to the police station and posted a forfeit of $10 for a hearing before the mayor at 9 a. m. of the same day. Defendant might just as easily have been directed to return for hearing on Monday. The fixing of a hearing on Sunday and the defense of the practice indicates a fundamental misunderstanding of the law on the subject which it is the purpose of this opinion to clear up. Our statutes refer to "the Lord's Day commonly called Sunday". If defendant could be required to attend court on Sunday so could his lawyer, witnesses and friends. The law favors worship and rest on the Sabbath. Prohibiting unnecessary work on Sunday, the law itself should not work.

There is no question of waiver in this case. Defendant did not plead guilty and ask to be sentenced forthwith. The transcript says he denied the charges. Whether, therefor, it had been the established practice to hold court on Sunday or whether the police official had merely erred in fixing the hearing on Sunday, it became the plain duty of the mayor to fix a hearing on a day other than Sunday and his continuing to hear and decide the case on Sunday renders the sentence void.

Our opinion on this decisive point in the case is strengthened by the views of many courts in other States which have reached the same conclusion. In Baxter v. The People, 8 Ill. 368, a verdict of guilty of murder was received on Sunday and sentence was imposed on the same day. The sentence was held to be void. In Devault v. Sampson, 114 Kan. 913, 221 Pac. 284, a justice of the peace received a plea and sentenced a defendant on Sunday. The sentence was void. In

Moss v. State, 131 Tenn. 94, 173 S. W. 859, L. R. A. 1915 D. 361, the court on Sunday charged the jury in a murder case, having employed the fiction of disregarding the clock and merely recessing Saturday's hearing. The Supreme Court of Tennessee reversed, holding in a most interesting opinion that under the common law of that State court might not lawfully be held on Sunday. In People ex rel. Meyer v. Warden, 269 N. Y. 426, 199 N. E. 647, a police magistrate tried, convicted and sentenced defendant on Sunday. The sentence was held to be void. In Guerrera v. The State, 141 Texas C. Rep. 278, 125 S. W. (2d) 595, a judge who had to preside in another county on Monday charged the jury in a murder case on Sunday. The conviction was set aside. In City of Parsons v. Lindsay, 41 Kan. 336, 21 Pac. 227, 3 L. R. A. 658, the court on Sunday received a verdict in a civil case and entered judgment. It was held to have been proper to receive the verdict but not to enter judgment. See also L. R. A. 1916 B. 1, Ex parte White, 15 Nev. 146, 37 Am. Rep. 466, and 50 Am. Jur. 860. No decisions to the contrary are discovered except where a statute specifically authorizes a magistrate to hold court on Sunday.

Did the law require the filing of an information before defendant could be lawfully convicted of a violation of the city ordinance? This is a question not entirely free from doubt. Our conclusion as to the illegality of the hearing on Sunday is sufficient to decide the case; yet, mindful that the mayor is and magistrates usually are, laymen, we prolong this already extended opinion only in the hope that our observations may be of practical benefit.

To begin with, two points may be taken as established; the arrest without a warrant was lawful and no information was in fact ever filed. The basis of the proceeding is section 1018 of The Third Class City

Law of June 23, 1931, P. L. 932, 53 PS §12198-1018 which authorizes proceedings for violation of city ordinances to be instituted by warrant or summons. Since the city has elected to proceed by arrest the vexing distinctions between summary proceedings for violation of a city ordinance and a civil action to recover a penalty for such violation (Borough of Mahanoy City v. Wadlinger, 142 Pa. 308) need not trouble us. As to summary proceedings the law provides:

"No warrant shall be issued except upon complaint, upon oath or affirmation, specifying the ordinance for the violation of which the same is issued. . . . Warrants shall be returnable forthwith. . . . Upon such return, like proceedings shall be had in all cases as are directed by law for summary convictions."

Notice must also be taken at this point of section 2005 of The Third Class City Law, 53 PS §12198-2005, which authorizes policemen to arrest without warrant and upon view and to commit for hearing persons guilty of a breach of the peace, disorderly conduct or a violation of a city ordinance involving a fine or penalty.

The arrest was without warrant and upon view and defendant was committed for hearing. Was it then necessary to file an information? Upon general principles of the common law it was necessary. Justice Agnew in Commonwealth v. Borden, 61 Pa. 272, 275, in stating the essentials of a summary conviction includes "an information or charge against the person". In Commonwealth v. Cannon, 32 Pa. Superior Ct. 78, 81, Judge Orlady says:

"The written complaint on which this proceeding is founded is the substratum of the magistrate's jurisdiction, and it is necessary in order to sustain his judgment that the complete statement of the offense charged is set out therein."

To the same effect is Commonwealth v. Gelbert, 170 Pa. 426, Johnson v. Borough of Pittston, 3 Luzerne

244, 2 Sadler Criminal Procedure, 939, and Hess & Valentine Practice in Subordinate Courts 488.

On the other hand, in Commonwealth v. Divoskein, 49 Pa. Superior Ct. 614, where the original charge was assault and battery but the conviction was for disorderly conduct and the record recited: ". . . after the hearing on the original charge, that the relator was an idle and disorderly person", Judge Rice remarked:

"By whom this charge was made, whether it was made by written complaint or orally, . . . are matters upon which the record is silent."

In Commonwealth v. Moss, 9 D. & C. 713, 714, the court in speaking of the violation of a city ordinance said:

"The record sent up on this appeal does not show by whom the charge was made, whether by written complaint or orally, what facts were alleged as constituting the offense, nor what ordinance was violated."

Certain of our statutes indicate the possibility of oral charges in summary proceedings. The General Borough Act of May 4, 1927, P. L. 519, sec. 3105, 53 PS §15195, relating to boroughs and The First Class Township Law of June 24, 1931, P. L. 1206, sec. 3302, 53 PS §19092-3302, relating to townships of the first class provide that when a person is arrested upon view for violation of an ordinance an oath or affirmation shall be immediately made. This has never been a part of The Third Class City Law nor of the codes of first or second class cities. Of all the municipal bodies which have the power to pass ordinances only the two smallest, boroughs and first class townships, are required in all cases to have a sworn complaint before summary conviction for violation of an ordinance. In this same connection it is well to note the initial sentence of the act authorizing police magistrates to take cash forfeits (Act of May 23, 1923, P. L. 339, 19 PS §75):

"Where any person is arrested on view by the police of any city or borough for the violation of any city or borough ordinance, or any other offense for which no formal information is required and no warrant is issued, . . ."

This language is ambiguous but the connotation of interest to us is the implication that no "formal information" may be required in cases which charge violation of any ordinance.

In this uncertainty common experience must be considered. The typical proceeding for violation of a city ordinance is usually a truly summary one. There is arrest upon view, the offender is taken before the mayor at once or at the next session of police court, defendant pleads guilty and is forthwith sentenced. In such case there may be no real need for a formal information because defendant, by tendering his plea of guilty before the information is made out, waives the right to formal written charges. This is the familiar practice sometimes known as "trying the case on the docket", the only record being the magistrate's minutes of the arrest, the oral charge, the plea and the sentence.

This procedure may suffice for a case where the plea is guilty, a situation not before us for decision; but if defendant pleads not guilty then a formal information must be made. This reconciles section 1018 of The Third Class City Law, 53 PS §12198-1018, which provides that prosecutions for violation of ordinances shall be conducted in the manner provided by law and that warrants for violation shall be issued only after the information filed, with section 2005 of the act, 53 PS §12198-2005, which empowers policemen to arrest upon view and without warrant. Prudence requires the filing of an information in an important case in any event; but where the plea is not guilty the requirement is mandatory. Only by the filing of an information showing the exact offense charged is the

law fully complied with: Commonwealth v. Ayers, 17 Pa. Superior Ct. 352; Commonwealth v. Ginsberg et al., 143 Pa. Superior Ct. 317; City of Johnstown v. Perry, 77 Pitts. L. J. 280; Commonwealth v. Weldon, 26 Northampton 383. There could have been no lawful conviction in the present case without the filing of an information.

Was it lawful to convict defendant upon the testimony of a witness who was not sworn? The record does not show that either Officer Cubellis or defendant was sworn and it was specifically admitted that no witness was sworn. This is another fatal defect. The act of the colonial legislature of May 31, 1718, 1 Sm. L. 105, sec. 4, 28 PS §253, provided that as to all felonies of death all witnesses must be sworn or affirmed. The Act of March 21, 1772, 1 Sm. L. 387, sec. 1, as amended by the Act of April 3, 1895, P. L. 32, 28 PS §251, requires an oath or affirmation of all witnesses and applies specifically to cases tried by aldermen, magistrates and justices of the peace. In Commonwealth v. Capero, 35 Pa. Superior Ct. 392-393, it was held to be reversible error to entertain the testimony of a child seven years old who had not been sworn, the court by Judge Orlady saying:

"There is no conflict among the authorities as to the necessity of administering an oath, though there is some as to the question of age" and again: "The testimony of witnesses is to be given under the sanctity of an oath, and where a child is of such tender years as not to be able to comprehend the nature of an oath, the safeguards which the law has placed around human testimony would be entirely overthrown were such statements permitted to be given."

In Commonwealth ex rel. Oncay v. Oncay, 153 Pa. Superior Ct. 569, the Superior Court in a per curiam opinion reversed in a habeas corpus case saying that unsworn reports of investigators, agents and doctors

cannot be received in evidence or considered by the court in a contested case. Such persons must appear, be sworn and examined as other witnesses. It is universal law that an oath or affirmation is required: 28 R. C. L. 584.

The record which the mayor has returned in response to the certiorari was not made up until after service of the writ upon him. The only record theretofore existing was a bare mention of the case on the police blotter which would have been entirely insufficient under the rule of such cases as Commonwealth v. Pennsylvania Milk Products Corp., 141 Pa. Superior Ct. 282, and Commonwealth v. Divoskein, 49 Pa. Superior Ct. 614. No extended comment is necessary because the record which was returned shows the conviction to have been illegal. It is sufficient to remark that the mayor's docket should show every essential step in the case, identify the offense charged and state the basis upon which conviction rests. The entries should be made contemporaneously with events as they transpire. Any other course gives rise to suspicion of the trustworthiness of the docket: Halfast v. Kerr, 58 Pitts. L. J. 209. We are glad to state, however, that the return made in the case appears to be an honest report of what occurred and only this word of caution is necessary. No evidence was presented as to the original state of the record. Hence no relief is granted because of the time when the record was made up.

The errors appear on the face of the record. Preliminary leave of court was obtained before the certiorari was issued. Certiorari was the proper remedy: Commonwealth v. Bey, 150 Pa. Superior Ct. 93; Commonwealth v. Hunter, 107 Pa. Superior Ct. 513.

Defendant was tried and convicted on Sunday. No formal charge of violation of a city ordinance was ever preferred against him although he was arrested upon view and pleaded not guilty; no witnesses were sworn or affirmed at his trial. Any one of these errors

would justify a reversal of the judgment, together they emphatically require it.

### Order

Now, November 27, 1946, defendant's exceptions numbered 1, 2, 3, 4, 9, 11, 12, and 13 are sustained, the judgment of conviction and sentence is set aside and defendant is discharged. The costs are placed upon the City of New Castle and the City of New Castle is directed to return to defendant the fine of $50 heretofore paid by him. Exceptions numbered 5, 6, 7, 8, and 10 are dismissed.