# Wynkoop *versus* Seal.

1. Seal, a broker, bought stock on the order of Wynkoop, paid for it, and informed him of the purchase. The stock was delivered to Seal; he frequently asked Wynkoop to take the stock, and although there might have been times when no stock was in his name, he could at any time have delivered it to Wynkoop, who never requested a delivery. Seal might recover for the money advanced.

2. Wynkoop was estopped from alleging that Seal could not comply, having never offered payment or demanded delivery of the stock, and Seal being ready to deliver at the time of trial.

3. It was not error to refuse to charge, that the plaintiff could not recover, because at some intermediate time, Seal had not the stock standing in his name or had temporarily hypothecated it.

4. Shares of stock are alike, and a transfer procured to be made by another of the stock would have been a compliance.

5. A judgment will not be reversed for an immaterial error which does the party no harm.

6. Gilpin *v.* Howell, 5 Barr 41, remarked on.

March 2d and 3d 1870. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia*: No. 50, to July Term 1869.

This was an action of assumpsit, commenced January 6th 1869, by Lewis Seal against John E. Wynkoop, to recover the price paid by the plaintiff, who was a broker, for stock bought for the de-

[Wynkoop *v.* Seal.]

fendant at his request. The declaration averred that the order to the plaintiff was for the purchase of stock in "The McClintock Oil Company."

The case was tried May 4th 1869. D. J. Woods testified for the plaintiff, that about February 1865, at the request of the defendant, he introduced him to the plaintiff, and the defendant instructed the plaintiff to purchase for him 200 shares of McClintock oil stock; he paid the plaintiff $200. The witness was then asked, "Do you know from conversation with Mr. Wynkoop whether he knew that this stock was purchased by the plaintiff as instructed by him?" The defendant objected, on the ground that the witness was asked for his "*impression*," &c. The objection was overruled, and a bill of exceptions sealed. The witness answered : "I cannot say that he said anything of that kind in so many words. He did intimate to me that the stock had been bought. I knew he was informed of the purchase. I have no doubt that he did intimate to me that the stock was bought for him. I conversed with the defendant after the purchase of the stock, probably the same day, about the purchase of the stock. I think I received telegrams from defendant to plaintiff in relation to this transaction."

The telegrams, as follows, were then given in evidence :—

"Pottsville, March 30th 1865.

To Lewis Seal, Esq., Stock Broker:

I was down yesterday but left unexpectedly, will be down again and see you on Saturday.

JOHN E. WYNKOOP."

"Pottsville, March 30th 1865.

To Lewis Seal, Esq., Broker:

Yours has just been received. Extend my McClintock 30 days. I will see you on Saturday.

JOHN E. WYNKOOP."

The plaintiff testified: On the 28th of February 1865, the defendant ordered him to buy 200 shares of McClintock oil stock, and paid $200 at the time; he bought 200 shares, which with expenses, &c., cost $1275.25; he had received dividends to the amount of $95. The defendant was informed of the purchase when made, and had been frequently requested to take the stock and pay for it; there never was a time when the plaintiff could not have delivered the stock; it was always under his control; it was bought for the defendant on 30 days' credit to the buyer; it did not pass at the time of the purchase from the seller.

The plaintiff produced a certificate, in his own name, dated May 3d 1869, for 200 shares of stock in "The McClintockville Petroleum Company." He further testified that he had his stock

[Wynkoop v. Seal.]

in larger certificates and got the certificate of 200 shares, on the 3d of May, out of a certificate of 500 shares; he had bought stock in the same company, before and after he bought for defendant; there might have been times when there was no stock in his name; he may have borrowed money on it; this stock was delivered to him April 10th 1865; he never gave defendant notice that the stock was ready.

The defendant gave no evidence.

He requested the court to charge :—

1. That if the jury believe, from the evidence, that there was no notice given to Mr. Wynkoop of the plaintiff having the stock ready to deliver, the plaintiff cannot recover.

2. That there have been no damages proved, and therefore the verdict must be for defendant.

3. That if the jury believes, from the evidence, that the plaintiff did not have 200 shares of the stock of the same company always in his possession ready to deliver to the defendant, but on the contrary, had, during that time, pledged or in any way disposed of all he had of said stock, the verdict must be for defendant.

4. That the stock alleged to have been ordered by defendant being "McClintock Oil Stock," and the stock proved to have been ordered being "McClintockville Petroleum Company" stock, there can be no verdict for plaintiff.

The court refused each of the points.

The verdict was for the plaintiff for $980.25.

The defendant took a writ of error. He assigned for error the admission of the evidence objected to, and the refusal of his points.

*G. M. Dallas*, for plaintiff in error.—As to the 4th point cited 1 Chitty on Pl. 305; 1 Greenleaf on Ev. § 66, 68; Thomas *v.* Mann, 4 Casey 520; Robbins *v.* Otis, 1 Pick. 368; Smith *v.* Barker, 3 Day 312; Waltman *v.* Allison, 10 Barr 464; Schoneman *v.* Fegley, 7 Id. 433; Rowan *v.* Rowan, 5 Casey 181; Reitzel *v.* Franklin, 5 W. & S. 33; Musgrove *v.* Gibbs, 1 Dallas 216; Funk *v.* Arnold, 3 Yeates 428. As to the 3d point: Gilpin *v.* Howell, 5 Barr 41. As to the 1st point: Deval *v.* Burbridge, 4 W. & S. 305; Drexel *v.* Raimond, 11 Harris 22; Harvey *v.* Turner, 4 Rawle 223; Brown *v.* Arrott, 6 W. & S. 402; Clark *v.* Bank of Wheeling, 5 Harris 322.

*J. R. Rhoads*, for defendant in error.—As to the 4th point: The court may decline to answer a point which assumes facts which are matters of evidence: Cullum *v.* Wagstaff, 12 Wright 300; Morrow *v.* Com., Id. 305; Addison on Contracts 611, 612; Stephen on Pleading 8. Accuracy in a corporate *name* is not

[*Wynkoop v.* Seal.]

essential: Marine Bank of Baltimore *v.* Blays, 4 Har. & Johns. 338; Mayor of Stafford *v.* Bolton, 1 Bos. & Pul. 4; Angell & Ames on Corp. § 645. As to the 3d point: McCombie *v.* Davies, 7 East 5; Laussatt *v.* Lippincott, 6 S. & R. 386; Newbold *v.* Wright, 4 Rawle 195; Warner *v.* Martin, 11 Howard 225; Gilpin *v.* Howell, *supra*. As to the 2d point: Addison on Contracts 612; Bayley *v.* Wilkins, 7 C. B. 899; Ballentine *v.* Robinson, 10 Wright 177; Bement *v.* Smith, 15 Wendell 493; 2 Parsons on Contracts 483; Sedgwick on Damages 281. As to the evidence; Cavendish *v.* Troy, 41 Vermont R. cited in Amer. L. Reg. Oct. 1869, p. 639; 1 Greenleaf on Ev. § 440.

The opinion of the court was delivered, March 10th 1870, by

Agnew, J.—This is the case of an agent who has bought stock for his principal and paid his own money for it, claiming to recover the sum that he has advanced for his principal. Seal testified that he had bought and paid for the stock at the request of Wynkoop, and informed him immediately of the purchase. He repeatedly requested Wynkoop to come and take the stock and pay for it. Seal also testified that there never was a time when he could not have delivered the stock to Wynkoop; it had always been under his control. He stated on cross-examination that there might have been times when there had been no stock in his name on the books of the company, and also that he might have borrowed money on it. He repeated, however, that there had not been an hour since his purchase of the stock, that Wynkoop could not have got it. On the trial, Seal produced a certificate for 200 shares, the number he was requested by Wynkoop to buy. There is no evidence that Wynkoop ever called to take the stock, to make payment, or to request a delivery of it. He seems to have left his agent to carry the stock for him without any effort to relieve him. Under these circumstances the defendant's counsel asked the court to charge that if the plaintiff had not always in possession the 200 shares of stock ready to deliver to the defendant, but on the contrary, had, during that time, pledged, or in any way disposed of all he had of the stock, the verdict must be for the defendant. The refusal of the court so to charge, is the principal error complained of. The case we have, then, is an advance of money by one man, at the request and for the benefit of another; and a notice of the purchase and demand of payment, and to take the stock when the agent was unquestionably able to perform his undertaking. Now clearly, it does not lie in the mouth of the principal to say that his agent could not comply, when he never offered payment or demanded delivery of the stock. The readiness of the plaintiff to comply at the time of the trial was evidenced by production of the requisite number of shares, and his crediting the principal with the dividends. Clearly it was not

[Wynkoop *v.* Seal.]

error, therefore, to refuse to say to the jury that the plaintiff could not recover, because at some intermediate time the agent had not that much stock standing in his own name on the books of the company, or because he might temporarily have hypothecated it. The true test of his ability to deliver the stock would have been a tender of payment, and a request for delivery. Had the request been made, he might have shown his ability to control so much stock, and had the transfer made. Shares of stock are alike, and a transfer procured to be made by another of the requisite number would have been a full compliance.

The case of Gilpin *v.* Howell, 5 Barr 41, does not resemble this. The judge of the District Court said, that when the stock was purchased and pledged as collateral security to the defendants (the brokers in that case) their character as *agent* ceased, and they became *pawnees, pledgees, or bailees.* Throughout the opinion of Justice Bell, the same view is taken that the stock was held in pledge; the defendants being bailees of it. And this court, instead of holding to the rigid rule given to the jury, that the bailees must have been always ready to deliver the same identical shares, held that readiness to deliver the same number of shares would be sufficient.

These views in effect dispose of the 2d assignment of error, that the judge refused to charge the jury that the plaintiff could not recover unless he had given notice to defendant of his having the stock ready to deliver to him. Notice that he had bought the stock, and to come and take it and pay for it, was all that was necessary in the first instance. Readiness to deliver, under such a notice, could be tested only, as we have said, by an offer to pay and a demand to deliver.

There was no error in permitting the question to be answered contained in the bill of exception. The question called for the personal knowledge of a fact communicated in conversation with the defendant. It was not in the most proper form, and if the answer had given impressions of the witness only, it might have been complained of. But the answer disclosed facts clearly indicating knowledge, to wit, a conversation, probably on the same day, about the purchase of the stock; and the reception of a telegram afterwards from the defendant, clearly showing his knowledge of the purchase. A judgment will not be reversed for an immaterial error which does the party no harm.

Judgment affirmed.