## Barbour *v.* Sproul.

*Brokers—Purchase of stock—Title.*

When a customer orders his broker to buy stock, and the broker does buy it from a sub-broker, and the broker then notifies the customer that the stock has been bought, the broker's title to the stock thereby passes to the customer, subject to any amount due from the customer to the broker, and to any lien of the sub-broker.

Argued Nov. 7, 1912. Appeal, No. 232, Oct. T., 1912, by South Side Trust Company of Pittsburgh, Receiver of Henry Sproul & Co., from order of C. P. Allegheny Co., July T., 1912, No. 2163, making absolute rule to turn over stock in case of John B. Barbour and William J. Bauer v. Henry Sproul and N. R. Evans, copartners,

doing business as Henry Sproul & Company. Before
MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER,
JJ. Affirmed.

Rule upon the receiver of a brokerage firm to turn
over stocks. Before CARNAHAN, J.

From the bill, petitions, and answers in this case the
following facts appear:

On June 4, 1912, Robinson & Orr requested the de-
fendants, stockbrokers in the City of Pittsburgh, to
purchase for them, and as their agents, twenty shares
of the capital stock of the Ohio Oil Company. On the
same day, the order was executed by Sproul & Company
through Chapin & Company and Hudson & Company,
New York brokers, and upon notice of the purchases,
Robinson & Orr paid to Sproul & Company the full
amount of the purchase price and commissions. Rob-
inson & Orr at once instructed Sproul & Company as to
how the certificates of stock should be issued and these
directions were promptly transmitted by wire to the
New York correspondents.

E. S. Wheeler, A. W. Bell and L. B. Banch were also
customers of Sproul & Company, and on June 5, 1912,
the latter's New York correspondents had in their hands
stock securities purchased for Sproul & Company and
charged to their account, these stocks having been pur-
chased for Wheeler, Bell and Banch, customers of Sproul
& Company. Wheeler paid Sproul & Company in full,
and Bell and Banch were carrying their stocks on mar-
gins.

On June 5, 1912, Barbour and Bauer, the plaintiffs,
filed a bill in the Common Pleas of Allegheny County
averring that they were creditors of Sproul & Company,
the defendants, that the defendants had sufficient prop-
erty to pay their debts and that neither of them was in-
solvent; that the defendants had borrowed large sums
of money upon stocks and they were unable to meet the
demands made upon them for margins or to pay as they

mature their several indebtedness; that if a receiver be not at once appointed for all their assets the defendants would be subject to a multiplicity of complicated proceedings and the sale of their assets; and praying for the appointment of a receiver to wind up their business. The defendants admitted the allegations in the bill and joined in the prayer thereof, and the South Side Trust Company, Pittsburgh, was thereupon appointed receiver.

At the time of the appointment of the receiver, the New York brokers had not received from Sproul & Company payment for the above stock, and held it and other securities of Sproul & Company awaiting a settlement of accounts. The securities thus held, by the New York brokers exceeded in value the amount of Sproul & Company's indebtedness to them. At the suggestion and with the consent of certain customers of Sproul & Company for whom the New York brokers had also purchased and were holding stock, the receiver directed the latter to sell the securities in their hands which was done. Robinson & Orr, Wheeler, Bell, and Banch declined to join in the request for the sale of the stock, and objected to the sale of their stock held by the New York brokers. The moneys received from the sale of the stock of the selling customers were sufficient to pay the whole indebtedness due from Sproul & Company to the New York brokers. The latter turned over to the receiver the surplus in their hands and such securities as had not been sold. Among the latter was the stock purchased for Robinson & Orr, Wheeler, Bell, and Banch. The receiver declined to deliver these stocks to their owners, and presented a petition to the court and obtained a rule on the owners to show cause why the stock should not be sold. At the instance of Robinson & Orr a rule was obtained on the receiver to show cause why it should not deliver to them the stock purchased for them by the New York brokers and then in the hands of the receiver. The rule to show cause why the stock in the hands of

the receiver should not be sold was discharged, and the rule to show cause why the receiver should not deliver to Robinson & Orr the stock purchased for them by the New York brokers was made absolute. The court also held that Bell was entitled to receive the shares of stock purchased for him by the New York brokers and then in the custody of the receiver, and directed the latter to deliver the stock to Bell on payment of the balance due on his stock. The receiver has taken this appeal.

The customers of Sproul & Company whose stock was sold by the New York brokers contend that by consenting to the sale of their stock, the stock of the other parties was saved and that its owners should not be permitted to gain possession of it under such circumstances without contributing their proper proportions and shares of the indebtedness to the New York brokers. They, therefore, claim that they shoud be subrogated to the rights of the New York brokers so as to enforce contribution by the holders of all the stock in the hands of the latter at the time the sales were made.

The court below held that the act of the customers of Sproul & Company in directing or at least consenting to a sale of their stock by the New York brokers was a voluntary act on their part which precluded them from the right to prevent the delivery of the stock in the hands of the receiver to its owners and from claiming contribution from the owners of the stock. The judge conceded that if the customers whose stock was not sold had agreed to a sale they would have been liable to contribute their share to the loss, but as they did not agree but absolutely refused their consent to the sale, they were not liable for contribution.

*Error assigned* was the order of the court.

*Warren I. Seymour*, of *Seymour, Patterson & Siebeneck*, for appellant.—The receiver represents the cus-

tomer-creditors of the insolvent brokerage firm of Sproul & Company, and creditors' rights are to be enforced through the instrumentality of the receiver: Cushing v. Perot, 175 Pa. 66.

An equity receiver stands in the position of a creditor levying execution. A trustee in bankruptcy, prior to the amendment of June 25, 1910, took the bankrupt's assets in the same plight and condition as the bankrupt left them: Richardson v. Shaw, 209 U. S. 365 (28 Sup. Ct. Repr. 512); Duplex Printing Press Co. v. Clipper Pub. Co., 213 Pa. 207.

On purchase of stock New York brokers acquired a lien for the purchase price paid by them. This lien attached to all stocks carried for Sproul: Willard v. White, 56 Hun. 581 (10 N. Y. Supp. 170).

Prior to insolvency and receivership, each customer had the right to redeem his stock upon payment of the balance due by him to Sproul & Company.

The receivership changed all this and the receiver occupying the position of a creditor levying execution, had the right to cause the sale of the property of Sproul & Company, transferring the rights of creditors to the funds realized by the sale.

By reason of the overpledging of stocks a loss arose. To the New York pledgees Sproul's customers occupied a position analogous to that of co-sureties, obligated to pay the advances made to Sproul & Company. Sproul & Company had not the right to redeem their securities on payment of a part of the lien of the New York brokers.

Customers who substituted money for stocks in the hands of New York brokers were not mere volunteers. Their rights here represented by the receiver are rights to contribution from the other customers benefited and to subrogation to the rights of the New York pledgeholders. These rights of contribution and subrogation do not depend on a contract. They assume the absence of a contract made by the persons against whom those rights are to be enforced: Fisher v. Clyde, 1 W. & S.

544; Haverford v. Fire Assn., 180 Pa. 522; Whitlock v. Nat. Bank, 29 Misc. 84 (60 N. Y. Supp. 611); Gould v. Trust Co., 6 Abbott's New Cases 381; Skiff v. Stoddard, 21 L. R. A. 102.

The right of contribution does not depend upon a contract, but assumes the absence of a contract made by the persons against whom those rights are to be enforced: McBride v. Potter-Lowell Co., 169 Mass. 7 (47 N. E. Repr. 242); McGonnigle v. McGonnigle, 5 Pa. Superior Ct. 168.

Robinson & Orr are as much liable to contribute as marginal traders. The New York brokers had a lien upon their stock which was relieved by the action of the relieving customers and it is immaterial that Robinson & Orr paid Sproul & Company in full after the lien attached, because the money so paid did not find its way into the hands of the New York brokers: Skiff v. Stoddard, 21 L. R. A. 102.

*Charles F. Patterson,* for appellee, Arthur W. Bell, cited: Richardson v. Shaw, 209 U. S. 365 (28 Sup. Ct. Repr. 512); Thomas v. Taggart, 209 U. S. 385 (28 Sup. Ct. Repr. 519); In re James Carothers, 192 Fed. Repr. 693; Lackawanna Trust & Safe Dep. Co. v. Gomeringer, 236 Pa. 179; Whitlock v. Nat. Bank, 29 Misc. 84 (60 N. Y. Supp. 611); Gould v. Trust Co., 6 Abbott's New Cases (N. Y.) 381.

*G. K. Wright,* of *McKee, Mitchell & Alter,* for appellees, Robinson & Orr.

PER CURIAM, January 6, 1913:

We agree with the conclusion of the learned court below. This is not a case for contribution. When a customer orders his broker to buy stock, and the broker does buy it from a sub-broker, and the broker then notifies the customer that the stock has been bought, the broker's title to the stock thereby passes to the cus-

tomer, subject to any amount due from the customer to the broker and to any lien of the sub-broker: 2 Cook on Corp. 1164. Robinson & Orr and Bell, the appellees, and Wheeler and Banch placed their orders for the stock with Sproul & Company, their Pittsburgh brokers, who purchased it through their New York correspondents. The latter at once notified Sproul & Company of the purchase who gave notice to their customers. Robinson and Orr and Wheeler paid to Sproul & Company the purchase price and commissions in full, and a balance remained due from Bell and Banch on their stock. When Sproul & Company notified their customers that the stock had been bought the sale was complete and the title passed to the customers subject only to the payment of commissions and of such balance of the purchase money as remained due. The broker and the customer were both bound by the contract and neither could repudiate it. The customer was bound to receive the stock and pay the balance due upon it, and an obligation rested on the broker to deliver it. When the receiver was appointed the stock had been purchased, the customers had been notified, Robinson & Orr and Wheeler had paid the broker in full, and a balance was yet due from Bell and Banch, the marginal purchasers. At this time Robinson & Orr and Wheeler had the right to demand the immediate delivery of their stock and Bell and Banch the delivery of their stock on payment of the residue of the purchase money by the latter two purchasers, subject, however, to the payment of the balance due from Sproul & Company to the New York brokers. The sub-brokers dealt only with the broker and not with the customer, and they had the right to hold all the stock purchased for the broker until the accounts had been settled between them and the balance due had been paid to the former. When the New York brokers sold sufficient stock in their hands, owned by Sproul & Company, to pay the latter's indebtedness to them, their lien was discharged, and they were required to surrender to

the receiver the stock purchased for the appellees. Robinson & Orr and Wheeler having paid in full for their stock were entitled to immediate possession, and Bell and Banch could obtain possession of their stock when they paid to the receiver the residue of the purchase price and commissions. The South Side Trust Co. as receiver of Sproul & Company never had title to the stock. It stood in the place of and represented the broker and was, therefore, only a pledgee of the stock and was required to deliver it to the pledgor when the marginal traders paid the receiver the balance due. The other creditors of Sproul & Company could not subject the stock to the payment of their debts through the receiver. They could only demand the right to participate in the unpaid balance of purchase money due from Bell and Banch.

Le Marchant v. Moore, 150 N. Y. 209, is very similar in its facts to the case in hand, except that the customers waived their right to the stock by proving their claims against the estate of the broker. It was there held that the customers were the owners of the stock, and that the title did not pass to the assignee of the brokers. In the opinion it is said: "But this fact (the brokers permitting the stock to remain in possession of the sub-brokers) does not operate to prevent the title vested in Evans & Co. (brokers) from passing to the plaintiffs (customers). They became vested with the title subject only to the lien of the defendants (sub-brokers). The title being in the plaintiffs, it did not and could not pass to the assignee under the assignment of Evans & Co." Denison v. Emery (U. S. C. C.), 153 Fed. Rep. 427, is also like the present case in its facts. In the opinion of the court it is said: "It seems to me, therefore, clear that, subject to the rights of Finley, Barrel & Co. (sub-brokers), Corner (customer) was, at the time of the failure of Dension, Prior & Co. (brokers) entitled to the possession of the fifty shares of the Quaker Oats stock, which had been bought for him, and

that he is now entitled to the proceeds of the sale of the stock."

The title to the stock involved in this case not being in Sproul & Company at the time of the appointment of the receiver, the latter was not entitled to possession of it, except to enforce the lien against the marginal traders for unpaid balances. When they were liqui- dated, neither the other customer creditors of Sproul & Company nor the receiver had any interest in or claim on the stock. A receiver has the right to the possession of and deals only with the property interests of his in- solvent. We need not concern ourselves with the rights of the parties if all the stock held by the New York brokers to secure Sproul & Company's indebtedness to them had been sold by the pledgees, or if the present claimants to the stock in the hands of the receiver had consented to or joined in a request for the sale of any or all the stock held by the pledgees as collateral for the Sproul indebtedness. These facts are not in this case. The New York brokers had the right to enforce payment of their claim against Sproul & Company by proceeding against any of the stock in their hands at their election: 31 Cyc. 863, Jennings v. Loeffler, 184 Pa. 318, but they sold the stock of the present claimants to contribution at the suggestion or on the order of the receiver with the consent of the owners. The appellees refused their consent to have their stock sold by the sub- brokers and the unsold stock was returned to the re- ceiver by the sub-brokers and belongs to the appellees. As pointed out above, the stock is not the property of Sproul & Company, and hence the receiver has no right to retain possession of it as against the owners. Under the facts of the case we are unable to see that the re- ceiver has the right to withhold the stocks from the owners to enforce contribution or for any other pur- pose.

Orders affirmed.