## Sproul, Appellant, *v.* Sloan.

*Stock brokers—Purchase of stock on margin—Hypothecation by broker—Conversion—Measure of damages—Usage.*

1. One to whom stock has been pledged for a loan has full power to hypothecate it so long as the original pledgor may obtain possession of it upon payment of his debt; but if it has been mingled with the other securities of the pledgee, or has been re-hypothecated by him to secure a different or larger debt than that for which it was pledged to him, or if the collaterals have been transferred, but the obligation they were given to secure retained, or if it has been in any way placed beyond the control of the pledgee, this is a conversion.

2. Stock brokers purchased for a customer in May, June and August, 1907, 1,500 shares of a certain stock at prices varying from $61.50 to $54 per share. The brokers agreed to carry the stock for the customer on a margin of $20 per share, which he deposited with them. As the stock was purchased from time to time the brokers mingled it with other securities under their control, and pledged them to a trust company and bankers as collateral for indebtedness of their own amounting to more than a million and a half dollars. This was without the authority or knowledge of the customer. In April, 1908, the brokers sold at $6.25 per share the stock which they had purchased for the customer but which he refused to pay for and take off their hands, and, after crediting him with the proceeds, the margins deposited and the devidends received on the stock, brought suit against him to recover the balance alleged to be due amounting to $34,214.51, with interest from the date of the sale of the stock. *Held,* 1, that a verdict was properly directed for the defendant for the reason that the brokers had converted to their own use the stock purchased for the customer by hypothecating it for their own indebtedness and, having so broken their contract with the customer, they were in no position to demand performance by him; 2, that the fact that the customer suffered no actual damage by the brokers' conversion of the stock was immaterial; 3, that the fact

that such hypothecation was a common usage among brokers could not be shown for the reason that a usage can never be shown if it be in contravention of a well-established rule of law.

3. The moment stock purchased by brokers for a customer upon a margin is converted by the brokers to their own use the customer is damaged and the measure of his damages is the highest price of the stock between the date of the conversion and that of the trial of a suit brought by the customer for the unlawful conversion.

Argued October 22, 1912.    Appeal, No. 90, Oct. T., 1912, by plaintiffs, from judgment of C. P. Allegheny Co., June T., 1910, No. 324, on verdict for defendant in case of Henry Sproul and H. E. Anderson, Partners as Henry Sproul & Company, for the use of Henry Sproul, doing business as Henry Sproul & Company, in the hands of his and their receiver, the South Side Trust Company of Pittsburgh v. John Sloan and Fidelity Title & Trust Company, Committee in Lunacy for John Sloan.   Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ.   Affirmed.

Assumpsit to recover an alleged balance on an account for stock purchased on margin.   Before SWEARINGEN, J.

The opinion of the Supreme Court states the case.

The court below directed a verdict for the defendant and judgment was entered thereon.   Plaintiff appealed.

*Errors assigned* were in directing a verdict for the defendant and in refusing to direct a verdict for the plaintiff.

*Warren I. Seymour,* of *Seymour, Patterson & Siebeneck,* for appellants, cited: Gillett v. Whiting, 120 N. Y. 402; Gruman v. Smith, 81 N. Y. 25; Porter v. Wormser, 94 N. Y. 431; Wynkoop v. Seal, 64 Pa. 361; Work v. Bennett, 70 Pa. 484; Jamison's Est., 163 Pa. 143; McIntire v. Blakeley, 12 Atl. Repr. 325.

*John M. Freeman,* with him *D. T. Watson, Robert Woods Sutton* and *Harry F. Stambaugh,* for appellees. —Where a broker purchases stock to be carried on margin for a customer, the relation of pledgor and pledgee is created: Learock v. Paxson, 208 Pa. 602; Mullen v. Quinlan, 195 N. Y. 109.

The decisions leave no doubt that such a pledging by a broker of his customer's stock for more than is due thereon, is not only a breach of contract, but is a breach of trust and is an illegal conversion: Strickland v. Magoun, 119 N. Y. App. Div. 113; McNeil v. Tenth National Bank, 46 N. Y. 325; Fay v. Gray, 124 Mass. 500.

OPINION BY MR. JUSTICE BROWN, May 28, 1913:

Henry Sproul & Company, stock brokers, who were engaged in business in the City of Pittsburgh, purchased for John Sloan, the appellee, in May, June and August, 1907, fifteen hundred shares of the capital stock of the United Copper Company. This stock was purchased at prices varying from $61.50 to $54 per share, and the brokers agreed to carry it for appellee on a margin of $20 per share, which he deposited with them. As this stock was purchased from time to time the brokers mingled it with other securities under their control, and pledged them to a trust company and bankers as collateral for indebtedness of their own amounting to more than a million and a half dollars. This was without the authority or knowledge of Sloan. In April, 1908, Sproul & Company sold, at $6.25 per share, the stock which they had purchased for the appellee, but which he refused to pay for and take off their hands; and, after crediting him with the proceeds, the margins deposited and the dividends received on the stock, this suit was brought to recover the balance alleged to be due, amounting to $34,214.51, with interest from the date of the sale of the stock. A verdict was directed for the defendant, for the reason, as stated in the opinion of the court denying a new trial and judgment for the

plaintiffs n. o. v., that, as Sproul & Company had con-
verted to their own use the stock purchased for the ap-
pellee, by hypothecating it for their own indebtedness,
they had broken their contract with him and were in no
position to demand performance by him. As an author-
ity for so holding, the learned trial judge cited and
relied upon Gillett v. Whiting, 120 N. Y. 402. What
was there said sustained him, though it was overlooked
that subsequently the court of appeals held that the
remarks in that case, as to the effect of a broker's con-
version of his customer's securities upon his claim
against the latter, were upon a question which was not
before the court and were, therefore, to be regarded as
mere obiter dicta, in conflict with the settled law of the
state: Minor v. Beveridge, 141 N. Y. 399. It is not
necessary for us to review the New York cases cited by
counsel for appellant in support of their contention
that the plaintiff below ought to have recovered, for
we are of opinion that the view entertained by the court
below was the correct one, without regard to the par-
ticular authority upon which it seems to have relied.

When Sproul & Company purchased the fifteen hun-
dred shares of stock the legal title to it vested in Sloan,
subject to the payment of the balance due by him for
commissions and advances made by them. He became
the pledgor and they the pledgees of the stock: Learock
v. Paxson, 208 Pa. 602; Barbour v. Sproul, 239 Pa. 171.
Sproul & Company might have used the stock in mak-
ing a specific loan for the purpose of enabling them to
carry the stock for the appellee, but, when they used
it for any other purpose, they made an improper use
of it, and when they pledged it, with other securities
under their control, for their own indebtedness, they
unlawfully converted it to their own use: Douglass v.
Carpenter, 17 N. Y. App. Div. 329; Strickland v. Ma-
goun, 119 N. Y. App. Div. 113, and 190 N. Y. 545; Ger-
man Savings Bank v. Renshaw, 78 Md. 475. "One to
whom stock has been pledged for a loan has full power

to hypothecate it so long as the original pledgor may obtain possession of it upon payment of his debt; but if it has been mingled with the other securities of the pledgee, or has been rehypothecated by him to secure a different or larger debt than that for which it was pledged to him, or if the collaterals have been transferred, but the obligation they were given to secure retained, or if it has been in any way placed beyond the control of the pledgee, this is a conversion": Vide authorities cited in support of this in 31 Cyc. 837.

But it is earnestly contended by learned counsel for the appellant that inasmuch as Sloan suffered no damage by the brokers' conversion of his stock, he ought not to be permitted to defeat their claim. This begs the question, for the moment the stock was converted by the brokers to their own use, the customer was damaged, and the measure of his damages was the highest price of the stock between the date of the conversion and that of the trial of a suit brought by the customer for the unlawful conversion: Learock v. Paxson, supra. From this there would, of course, have to be deducted the balance of the purchase money due the brokers. "The pledgee of stock cannot legally part with the possession of the stock by a sale or repledge of it, except as he transfers the debt which the stock secures. If he does so he is guilty of a conversion. ......Even where, apparently, the pledgor would not be injured by the pledgee's separating the stock from the debt and transferring the stock pledged as collateral security, yet the law rigidly protects the interests of the debtor and pledgor, and will not compel him to submit to the danger of such transfers by the pledgee. There may, of course, be an express contract or understanding to the contrary": Cook on Corporations (6th Ed.), Sec. 471.

The contract of Sproul & Company, which the appellants, through their receiver, would enforce against Sloan, was one to hold the stock for him until he paid

the balance of the purchase money and demanded delivery of the securities, and in the interval they had no right to repledge the stock except for the debt which it secured. Instead of performing their contract with Sloan, the brokers made use of his property as if it was a part of their own capital, to enable them to make enormous loans, not, however, for the purpose of carrying his stock, but that they might continue to carry on their business as stock brokers. They treated his stock as their own, and the moment they did so without his authority, they placed him in jeopardy. After thus having broken their contract with him, why should they be permitted to demand performance by him? He was in entire ignorance, until a short time before the trial, that his brokers had converted his stock to their own use, and as soon as he learned what they had done, he promptly repudiated his contract with them. This was his undoubted right. The tender of the stock to him before it was sold is immaterial, for, at the time of the tender, the contract had been broken by the brokers, and, therefore, neither they nor their receiver could thereafter call for performance by their customer. It was for this reason that the learned trial judge directed the verdict for the defendant, and no sufficient answer has been given to it on this appeal. Nothing is to be found in any of our cases in conflict with the view of the court below. The main reliance of counsel for appellant seems to be placed on Wynkoop v. Seal, 64 Pa. 361. In that case the broker bought stock for a customer under a special contract, by the terms of which the customer was to have thirty days' credit in paying for it, and the title to it did not pass at the time of the purchase from the seller. In addition to this, the writer finds from an examination of the paper books in the case that it did not appear that the broker had hypothecated the stock for any other indebtedness than that of his own customer.

The unauthorized pledging by a broker of his cus-

tomer's securities places the latter in jeopardy, and the only safe and sound rule, in the absence of authority from the customer to pledge them as they were pledged in the case now before us, is that the broker pledges them at the peril of forfeiture of his right to call upon his customer for performance. It was contended in the court below that what Sproul & Company did was a common usage among brokers, whose business would be seriously interfered with if they were forbidden to repledge securities of their customers. As to this the learned trial judge well said: "Such a usage can never be shown, if it be in contravention of a well-established rule of law. It is a rule of law in Pennsylvania that the relation between a broker and his customer with respect to stocks purchased upon margin is that of pledgor and pledgee. To permit the broker to use the stock as capital in his own business is to shift the risk of his business upon his customers, a thing never contemplated in the contract. Such a usage, if it exists, is unreasonable: 'Malus usus abolendus est.' "

The assignments of error are overruled and the judgment is affirmed.