# Sterling's Estate.

*Conversion—Pledgor and pledgee—Brokers—Pledge of bonds—
Recovery of purchase-price.*

1. While the relation between a broker and his customer with
respect to bonds purchased upon margin is that of pledgor and
pledgee, the relation may, nevertheless, exist although the margin
has not been paid; if a sale takes place, and no margin is required
and none was intended by the parties to be furnished, other than
that the bonds should be retained by the broker as security, the
relation of pledgor and pledgee is nevertheless established.

2. Where a firm of brokers sold certain bonds to a customer, re-
tained the bonds as security for the payment of the purchase-price,
but required no further security, and subsequently mingled the
bonds with other securities under their control and pledged them as
collateral for indebtedness of their own without the customer's
knowledge or consent, they thereby unlawfully converted the bonds
to their own use and were in no position to demand performance
by him; by their acts they released him from liability for the
payment of the purchase-price, and it was not material that they
subsequently tendered the bonds.

Argued April 12, 1916. Appeal, No. 114, Jan. T., 1916,
by Plympton, Gardiner & Company, from decree of O. C.
Luzerne Co., No. 591, of 1913, dismissing exceptions to
adjudication, in Estate of A. A. Sterling, Deceased. Be-
fore POTTER, STEWART, MOSCHZISKER, FRAZER and WALL-
ING, JJ. Affirmed.

Exceptions to adjudication. Before FREAS, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. Plympton, Gardi-
ner & Company appealed.

*Error assigned,* among others, was in dismissing the
exceptions.

*Wm. C. Price,* with him *F. A. McGuigan,* for appellant.
—A broker who has bought stocks or bonds for another,

with money advanced by himself and who holds it in his own name, may, so long as he has not been paid or tendered the amount of his advances, pledge it as security for his own debt to a third person without being guilty of conversion or breach of contract: Esser v. Linderman, 71 Pa. 76; Smith v. Craig, et al., 136 N. Y. Supp. 423; Mayer, et al., v. Monzo, 137 N. Y. Supp. 616; Wood v. Hayes, et al., Administrators, 81 Mass. 375.

*John McGahren,* with him *T. H. Atherton,* for appellee. —The bonds were the property of the decedent, although the purchase-price was not paid and although they were never physically delivered to him: Schnebly v. Shirtcliff, 7 Philadelphia 236; Winslow, Lanier & Co. v. Leonard, 24 Pa. 14; Com. v. Hess, 148 Pa. 98; Gonser v. Smith, 115 Pa. 452; Scott v. Wells, 6 W. & S. 357; Com. v. Guinzburg, 46 Pa. Superior Ct. 488.

OPINION BY MR. JUSTICE MOSCHZISKER, May 15, 1916:

At the audit of the executor's account in the estate of A. A. Sterling, deceased, Gilbert M. Plympton and Pierpont P. Davis, trading as Plympton, Gardiner & Company, presented a claim founded on a transaction with the decedent concerning the purchase of certain railroad bonds. The court below found as follows: "In 1903, Redmond, Kerr & Company, brokers and bankers, sold to A. A. Sterling, the decedent, $25,000.00 Mexican International Railroad Company 4 per cent. bonds, at 90½ and interest......Lee Gazley, the agent of Redmond, Kerr & Company, testified that he sold the bonds to Sterling; that he did not ask him to put up any deposit or any margin at that time, as it was never necessary with Mr. Sterling, and that, of course, he never made a demand upon him. Other evidence shows that Sterling did not furnish any margin whatever, and none was asked for until March 24, 1908, and then by Plympton, Gardiner & Company, who took over the account from Redmond, Kerr & Company......During nearly the entire

time from the sale of the bonds to the present, both of said firms of brokers, while they were in their respective possession, mingled the Mexican International Railroad Company bonds with other securities under their control and pledged them to different banks as collateral for indebtedness of their own, amounting to from $100,000.00 to $240,000.00, which sums greatly exceeded Sterling's indebtedness to the brokers. There is no evidence that Sterling either knew of or consented to this practice. ......The contract between Redmond, Kerr & Company and Sterling was, in effect, that the brokers sold him these bonds at a stipulated price, that they required no margin, they to retain possession of the bonds, and that they would charge Sterling such interest as would amount to the coupons. Sterling was charged on the brokers' books as owing the purchase-price and with interest as it matured; he was credited with the bonds themselves and with the coupons as they were paid...... Such was the contract taken over by Plympton, Gardiner & Company, the present claimants."

In refusing the claim the court said: "At the audit these bonds were tendered to the executor and the payment of $24,988.19, with interest from September 30, 1913, was demanded by Plympton, Gardiner & Company. The executor repudiated the contract as soon as he learned of the conversion. The material facts in this case are precisely those in Sproul v. Sloan, 241 Pa. 284, and Darr, Administrator, v. Fidelity Title & Trust Co., Committee, 243 Pa. 591, with one important exception. In those cases the customer paid the brokers a margin upon the stock purchased; in this case, no money was paid and no collateral whatever was furnished by the customer (aside from the bonds in question). The sale of these bonds under the circumstances vested the ownership of them in Sterling, subject to the payment of the balance shown by the account to be due the brokers: Barbour v. Sproul, 239 Pa. 171. To secure this balance the brokers retained the bonds themselves and for any

shortage which might arise they relied upon the general credit of Sterling, instead of upon the customary margin. While it is said in Sproul v. Sloan, on page 290, that it is a rule of law in Pennsylvania that the relation between a broker and his customer, with respect to stocks purchased upon margin, is that of pledgor and pledgee, yet we do not understand that that relation cannot exist unless a margin is paid. · If a sale takes place and no margin is required and none was intended by the parties to be furnished, other than that the bonds should be retained by the brokers as security, the relation of pledgor and pledgee is established.......The brokers were to carry the bonds for Sterling, and while no time was mentioned for payment, we may assume that it was for a reasonable time, or until demand made for payment. Before any demand was made, Plympton, Gardiner & Company had mingled these bonds with other securities under their control and had repeatedly pledged them as collateral for indebtedness of their own, without his (Sterling's) knowledge or consent; they thereby unlawfully converted the bonds to their own use and are in no position to demand performance by him. It has been shown that the brokers could have delivered similar bonds to Sterling at any time and that what these brokers did is the common practice among them. It is argued that Sterling, himself a banker, must have known of this custom. But these facts are held in Sproul v. Sloan to be immaterial."

Exceptions to the findings and conclusions were dismissed, and the adjudication was confirmed; Plympton, Gardiner & Company have appealed. Their chief contention is: "Mr. Sterling never having advanced any money, no title to any Mexican bonds ever vested in him," and in support thereof they say, "The firm of Redmond, Kerr & Company bought or obtained the Mexican bonds for the purpose only of carrying out their contract with Mr. Sterling, whenever called upon to do so; these bonds were taken over by Plympton, Gardiner & Company, not

as the property of Mr. Sterling, but simply for the purpose of having the same on hand whenever called upon by Mr. Sterling to fulfill the contract and deliver the number of bonds purchased." It will be seen that this position is not in accord with the facts as found by the court below, and, since they are supported by the evidence in the case, the appellants' contention cannot be sustained. In point of fact, most of the material findings as to the bonds in question having been purchased for and in effect delivered to Mr. Sterling, and by him pledged to the appellants, are not only found on the testimony of the latter's bookkeeper, but are further sustained by their own averments in a declaration filed by them in a suit instituted against the decedent in his lifetime, as well as by their whole conduct in relation to these securities, aside from their unlawful rehypothecation. The court below properly determined that the bonds had been sold and constructively delivered to Mr. Sterling, and were owned by him, even though he had not paid for them in cash. We need only add that the recent authorities cited by the learned auditing judge amply sustain his conclusions of law.

The assignments of error are overruled and the decree is affirmed; appellants to pay the costs.