Commonwealth *v.* Nixon, Appellant.

Argued October 1, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Frank J. Thomas,* and with him *C. W. Benedict* and *Lee A. McCracken,* for appellant.

*Dan B. Goodwin,* District Attorney, and with him *G. G. Martin,* for appellee.

OPINION BY LINN, J., November 14, 1928:

Appellant, a stock broker, was convicted of violating the Act of May 18, 1917, P. L. 241, "making the fraudulent conversion of property or the proceeds of property a misdemeanor ......," see generally Com. v. Ryder, 80 Pa. Superior Ct. 452; Com. v. Gilliam, 82 Ib. 75; Com. v. Gartman, 83 Ib. 108; Com. v. Jackson, 86 Ib. 351; Com. v. Shanklin, 87 Ib. 53. The act provides that any person having received or having possession, in any capacity or by any means or manner whatever, of any money or property, of any kind whatsoever, of or belonging to any other person ....... or which any other person ...... is entitled to receive and have, who fraudulently withholds, converts, or applies the same, or any part thereof, or the proceeds or any part of the proceeds, derived from the sale or other disposition thereof, to and for his own use and benefit, or to and for the use and benefit of any other person, shall be guilty of a misdemeanor."

Appellant and D. F. Cadigan were partners, trading as Cadigan, Nixon & Company in Oil City, Venango County. Cadigan died on or about January 22, 1927; the firm then closed its doors, having been insolvent for over a year; bankruptcy proceedings fol-

lowed, showing an indebtedness of over $400,000 in excess of assets.

The firm's books were received in evidence and showed marginal transactions in a variety of stocks for a number of customers, and also several accounts under fictitious names (one, Bulls and Errors) showing marginal transaction by the firm for its own account. For the purchase of stocks listed on the New York Exchange, appellant's firm employed Morris, Brown & Company of Pittsburgh (hereafter called the Pittsburgh broker), who dealt on the New York Exchange.

D. C. Belding, the prosecuting witness, for some years before and at the time of the failure, maintained an account with appellant's firm. The marginal requirement was 25%. On or about July 1, 1924, January 26, 1925 and March 16, 1925, he purchased through appellant's firm 600 shares (200 shares each purchase) of one of the classes of stock of the Barnsdall Corporation listed on the New York Exchange. After each purchase he received a confirmation in the following form (varying as to date and price):

"Cadigan, Nixon & Company
Brokers
Members Pittsburgh Stock Exchange.
Associate Members New York Curb Market.
Oil Exchange Building

D. C. Belding                    Oil City, Pa., July 1, 1924.

Upon Your Order and For Your Account and Risk,
We Have This Day Bought

| Date of Transaction | Quantity | Name of Security | Price | Firm on N. Y. Stock Exchange Thru Whom Order Was Executed | Commission New York | Our Taxes Commission | Total |
|---|---|---|---|---|---|---|---|
| July 1 | 100 | Bdlb | 15½ | Morris Brown | 15.00 | | 1,565 |
| | 100 | Bdlb | 15½ | & Co. | 15.00 | | 1,565 |

1. It is agreed between broker and customer that all transaction's are subject to the rules and customs of the Exchange and Clearing House where order is executed.

2. That all orders for the purchase or sale of securities are executed for immediate delivery; purchases are subject to an interest charge on delayed payments; securities may be carried for account of customer by agreement.

3. That all securities from time to time carried for a customer's account or deposited to protect the same, may be loaned by the broker, or may be pledged by him either separately or together with other securities either for the sum due thereon or for a greater sum, all without further notice to the customer.

Respectfully,

Cadigan, Nixon & Company.''

Appellant's firm made those purchases through the Pittsburgh broker. When they were made and during the period involved, Belding had a marginal credit with appellant's firm sufficient to carry the stock. Early in January, 1927, his account was credited on the firm's books with a dividend of $300 on this Barnsdall stock.

The legal relation of the parties to the transaction then was that appellant (who was in charge of the matter and had conducted the negotiations) by the documents in evidence declared to his customer, Belding, that he had purchased and held in pledge for the customer, the shares of stock specified; he also asserted that a dividend of $300 had been declared on this stock and paid to him for, and was credited to, the customer's account. With such evidence in the record there is no basis for the assertions made on appellant's behalf, that no crime was committed because no certificates of stock physically came into

his hands, and that there is no proof that the stock was ever purchased for the customer. Appellant's declarations, appearing in the books of his firm and in the documents issued by him, are ample to sustain the purchase for Belding's account which the jury must have found; indeed, no other result seems possible, as no evidence was offered on behalf of appellant to contradict the case made by the Commonwealth.

From the time of their purchase for Belding's account, he was the pledgor of the purchased stocks and appellant's firm was the pledgee: Learock v. Paxson, 208 Pa. 602; Barbour v. Sproul, 239 Pa. 171 Sproul v. Sloan, 241 Pa. 284; Duel v. Hollins, 241 U. S. 523. In Barbour v. Sproul, it is said: "When a customer orders his broker to buy stock, and the broker does buy it from a sub-broker, and the broker then notifies the customer that the stock has been bought, the broker's title to the stock thereby passes to the customer, subject to any amount due from the customer to the broker and to any lien of the sub-broker: 2 Cook on Corp. 1164." While appellant's firm had the right to pledge the stocks for a loan to it, and in fact, did so with the Pittsburgh broker, its obligation was at all times to have such stocks available for delivery to Belding if he demanded them and tendered payment of any balance due for them: Barbour v. Sproul, supra; Sproul v. Sloan, supra; for an exhaustive statement of the relations of broker and customer in marginal transactions see Richardson v. Shaw, 209 U. S. 365, 375.

January 15, 1927, appellant sold for the account of his firm, inter alia, 400 shares of the Barnsdall stock, without having any other stock to deliver in fulfillment of his contract than 400 shares out of the 600 then to the credit of Belding, and his 'position' book in evidence supports the verdict that he sold that

stock. This order to sell was given by him in Oil City, Venango County, to the Pittsburgh broker in Pittsburgh. At that time the market price of the stock exceeded the price at which it was purchased for Belding, but the proceeds were credited to appellant's own account on his books, and to his credit and in reduction of his large indebtedness on the books of the Pittsburgh broker making the sale. This broker's written report of the sale for, and credit to, the appellant was found by the trustee in bankruptcy in its proper place among the records of appellant's firm, and at least one of the entries recording the sale for his account in appellant's books was in his handwriting. His books also show that the firm was insolvent at the time, and that he had made a number of sales of other stocks which his firm did not own, but which could only be executed (and according to his books were so executed) by the use of his customers' stocks pledged to him, and in turn by him pledged to his Pittsburgh broker for advances.

It is settled that failure to have an equal amount of such pledged stocks available for delivery to the customer on payment of indebtedness is conversion: Sproul v. Sloan, supra; Berberich's Est., 264 Pa. 437; Sterling's Est., 254 Pa. 155, 157; Pearson v. Kurtz, 280 Pa. 34. Appellant contends that the sales for his firm's account of stocks pledged by other customers were not relevant; they were important evidence of appellant's fraudulent intent in the circumstances: People v. Kardos, 243 N. Y. 584; Com. v. Bell, 88 Pa. Superior Ct. 216, 223; Com. v. Camwell, 89 Ib. 339, 345. Not only was appellant's firm a pledgee, but it was a lender of money to Belding, charging him interest on the amount owed by him in excess of his margin. On the other side of his account was the stock pledged; when appellant sold part of that stock as described in the evidence, he reduced

the customer's credit without his consent; he also applied and credited the proceeds of the sale of part of the pledge to his own trading account in reduction of his indebtedness to his Pittsburgh broker; in short, he converted his customer's property in pledge and appropriated the proceeds to his own use. Such conduct is prohibited by the act under which he was indicted.

Appellant contends however, that there is no direct evidence that a certificate of stock was ever delivered to Belding, and that he cannot be convicted unless such certificate was delivered. There is no merit in the contention; the phraseology in the indictment referring to a certificate of stock is a mere averment of the pledge, which, as the cases cited above show, is the legal effect of the transaction resulting by the broker's purchase of stock for a customer on margin. To sustain the charge in the indictment it is unnecessary to show that a certificate of stock was physically delivered to Belding or to appellant. "A certificate of stock is authentic evidence of the title to stock, but it is not the stock itself, nor is it necessary to the existence of the stock. A shareholder may upon his demand, obtain a certificate of his shares, but unless demanded by him, it need not be issued. He may transfer his shares without having a certificate." 7 R. C. L. p. 213, and see Gorman v. Littlefield, 229 U. S. 19, 23.

Appellant also contends that the crime was not committed in Venango County and that the court was therefore without jurisdiction. All of Belding's transactions with appellant were had in Venango County, at appellant's place of business; the appellant there did what is charged against him. It is immaterial if some acts in the transactions were done at appellant's request by the Pittsburgh broker at Pittsburgh, or by the Pittsburgh broker on the New

York Exchange: Com. v. Schmunk, 22 Pa. Superior Ct. 348, and 207 Pa. 544; Com. v. Dissinger, 59 Pa. Superior Ct. 247, 254. It is also contended that there was error in receiving in evidence appellant's books of accounts. They were relevant; they had been kept under the supervision of appellant (Com. v. Moyer, 76 Pa. Superior Ct. 20, 26) and in part were in his handwriting; they accorded with the transactions reported to his customer as having been performed for the customer's account. Some accounts from the books of the Pittsburgh broker were offered in evidence and objected to as hearsay on the ground that they were records of transactions said to have occurred in New York, and therefore not subject to proof, unless the New York witnesses who performed the acts were called to testify. There is no merit in the position. Among appellant's papers in their proper place were found the reports received by his firm from the Pittsburgh broker of transactions for appellant's firm; the Pittsburgh broker's accounts were in accord with those reports, and appellant's books showed the transactions in accordance with the same papers, and therefore in accordance with the Pittsburgh broker's books. The latter, therefore, really proved little or nothing that was not already in the case. But such records of the Pittsburgh broker as recorded to the credit of appellant's firm the proceeds of the sale of Belding's stock and of other similar sales of customers' stocks were important evidence to show that fraudulent conversion.

What has been said disposes of all but one of the fifty-two assignments of error. It complains that the court sustained the demurrer of the Commonwealth to defendant's plea in bar which averred that defendant had therefore been on trial under the same indictment and that after the evidence had been received and submitted to the jury and had been under its

consideration for about twenty-four hours, the jury came into court on Sunday and reported a disagreement; that the court then discharged the jury "and that [in the words of the plea] though no verdict was reached in said case, the failure was not owing to any legal consent of him, made or given, or any interposition of Providence or impelling necessity nor discharge of said jury legally taken" which "operated as an acquittal of defendant of the charge preferred . . . . . ." Attached to and made part of the plea was a transcript of what took place when the jury came in. It appears that when the jury reported its inability to agree, the court asked: "Has defendant [who was present] or his counsel any objection to the discharge of the jury?" Counsel answered "I don't think we ought to object to that, your Honor; it seems inhuman to hold them longer." The court: "Does counsel for the defendant feel that we should further instruct the jury?" Counsel "I don't think so, your Honor . . . . . ." The jury was then discharged, "being [as the judge stated] unable to agree."

Defendant asserts (a) that no legal necessity to discharge the jury appeared, and (b) that the jury could not be discharged on Sunday unless the court also discharged the defendant. Whether a jury should be discharged before verdict in the trial of a misdemeanor is within the discretion of the trial judge whose action will not be reversed in the absence of manifest abuse of power: 16 R. C. L. p. 321; Com. v. Cook, 6 S. & R. 577, 587. Appellant has suggested nothing in the light of that rule that would warrant our differing from the court below; especially so, if the circumstances justified defendant's counsel in saying to the court "I don't think we ought to object to that [discharging the jury] your Honor, it seems inhuman to hold them longer." Concerning the com-

plaint that the jury was discharged on Sunday, it is
sufficient to say that if "inhuman to hold them longer"
as defendant's counsel said, a discharge on Sunday
was a duty. But we need not ground our decision
on that statement of counsel. In this Commonwealth
a jury may render its verdict and be discharged on
Sunday: Huidekoper v. Cotton, 3 W. 56; and that is
true notwithstanding that the receipt and recording
of the verdict require the exercise of judicial power;
before it can be received, the court must determine
whether the verdict tendered is sufficiently responsive.
and if not, what further proceedings may be appro-
priate to make it conform to the necessities of the
issue tried; an illustration of possible judicial action
on the tender of an irresponsive or incomplete verdict
may be found in Com. v. Huston, 46 Pa. Superior Ct.
172, 216, (though not involving Sunday); see also
Com. v. Hartley, 89 Pa. Superior Ct. 230. If receiv-
ing and recording a verdict is within the class of
permitted acts described as ministerial, to distinguish
them from judicial acts, accepting the conclusion that
the jury cannot agree is within the same class; in
each case, the discharge of the jury follows; if it did
not, we should have the anomalous proceeding of im-
prisoning twelve jurors during part of a day merely
because it happened to be Sunday. The proper basis
for action by the court in either event is necessity:
Com. v. Cook, 6 S. & R. 577, 579; Com. v. Tenbroeck,
265 Pa. 251, 257. It is more unreasonable to keep
the jury together on Sunday after they have agreed
than it is to receive the verdict and to discharge them;
precisely the same reason requires their discharge if
their inability to agree be accepted, and in that view
it is immaterial whether defendant's counsel objects
or as he did in this case, agrees: Com. v. Cook, supra;
see also U. S. v. Ball, 140 U. S. 118, 131, and on the

344

second appeal, 163 U. S. 662, 670; this assignment is also over-ruled.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.