**OLER v. LESTER HARDING, Inc., et al.**

No. 7900.

Circuit Court of Appeals, Third Circuit.

Argued April 7, 1942.

Decided April 27, 1942.

John J. Gain, of Philadelphia, Pa. (Thomas C. Egan, of Philadelphia, Pa., on the brief), for appellants.

Herman H. Krekstein, of Philadelphia, Pa. (H. E. Potter, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, JONES, and GOOD-RICH, Circuit Judges.

GOODRICH, Circuit Judge.

Receivers were appointed in a civil action in the court below to liquidate the affairs of Lester Harding, Inc., an insolvent dealer in securities. The appellant in this

case [1] was a customer of Harding. At the time of the appointment of the receivers he owed the Harding firm $2,000 and as security therefor had pledged previously share certificates of the Boston & Albany Railroad, Warren Railroad Company and Valley Mould & Iron Company. Harding had, prior to the receivership, pledged various securities, the majority of which belonged to its customers, with the City National Bank of Philadelphia for an indebtedness owed by it to the bank. The bank sold sufficient of the pledged securities to repay its loan and returned the unsold ones and a small sum of money to the receivers.

Among the securities which survived the sale and were returned by the bank to the receivers were the three certificates pledged by Burke as security for his $2,000 loan. The plaintiff claims to be entitled to the value of these securities, less the amount of his unpaid loan, with interest thereon. The court below, however, following a report by a Special Master appointed to straighten out the affairs of the brokerage concern, denied the plaintiff's claim. The Master held, first, that the customers whose securities survived the sale had no greater rights than those whose securities were sold and that all must contribute pro rata to the loss. Secondly, he determined that the claimants whose securities were wrongfully pledged [2] had priority to those whose securities were rightfully pledged and that the claims of the former must be satisfied in full before the latter could get anything out of the proceeds remaining after the bank had satisfied its claim. This left the Burke claim as one against the general estate of Harding since the value of the securities returned was not as great as the claims in the preferred class. This appeal followed the Court's approval of the Master's recommendations.

It is to be noted that the proceeding in the court below was not in bankruptcy but was a civil action, in federal court because of diversity of citizenship, in which a receiver was appointed to liquidate the broker's business. All of the transactions took place in Pennsylvania. The appellant claims, and the appellees concede, that the measure of the claimant's rights is to be taken by the law of Pennsylvania. This is the correct and indeed, the only position which we may take. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The claimant's contention, based upon Pennsylvania decisions, is clear and to the point. The receiver has the right to possession of and deals only with the property interests of his insolvent. Barbour v. Sproul, 1913, 239 Pa. 171, 86 A. 714. The stock in the possession of the broker belonged to the customer and the position of the broker was only that of a pledgee for security. When the broker repledged the securities for his own indebtedness without the customer's permission (and there was none here) there was a conversion for which the broker was liable. While earlier Pennsylvania cases held that this conversion by the broker wiped out any claim he might have against the customer for the unpaid portion of the purchase price of the securities,[3] that rule was later modified as to the extinguishment of the broker's claim, but only that far. Otis v. Medoff, 1933, 311 Pa. 62, 166 A. 245. The rule that rehypothecation under the circumstances of this case amounted to a conversion has since been reaffirmed, accompanied by a discussion, not relevant here, of the highest intermediate value rule as to damages. Foley v. Wasserman, 1935, 319 Pa. 420, 179 A. 595. The conclusion erected upon this foundation is that the receivers, having got back into their hands the securities belonging to the claimant, must, just as the broker himself would have been compelled to do, turn them back to the claimant (or pay their value) subject only to the pay-

---

[1] The reclamation claim was originally brought by John J. Burke, Jr. and Katharine L. Burke, his wife. Mrs. Burke having died during the pendency of the litigation, her death was suggested of record and the action continues by Mr. Burke, survivor in the tenancy by the entireties by which their stock was held.

[2] Presumably because they owned securities in the broker's possession, but were not indebted to the broker.

[3] Sproul v. Sloan, 1913, 241 Pa. 284, 88 A. 501, Ann.Cas.1915B, 941; Darr v. Fidelity Title & Trust Co., 1914, 243 Pa. 591, 90 A. 368; Sterling's Estate, 1916, 254 Pa. 155, 98 A. 771. Sproul v. Sloan is summarized and commented upon in Warren, Margin Customers (1941) 377. Among the comments appears the following: "Was B's pledge to C a conversion? The answer of the court was 'yes.' Our thoughts are in perfect harmony with the court on this, which is the principal point."

ment of the admitted indebtedness owed by the claimant to the broker.

This conclusion is strengthened by reference to Barbour v. Sproul, cited above. Two of the claimants in that receivership were margin customers who owed a balance on stock purchases. Their situation was certainly no better than that of the appellant here who pledged his certificates as security on a loan. The court in that case ordered the receiver to deliver the stock to the customer on payment of the balance due and this order was affirmed. The Supreme Court stated that the case was not one for contribution. In Barbour v. Sproul some of the customer-pledgors had consented to a sale by the New York pledgees of the then insolvent Pittsburgh broker of the securities in their hands. Does that set of facts distinguish that case from the one at bar? The court did not comment upon the point further than to say that it need not concern itself with the rights of the parties if all the stock held by the New York brokers had been sold or the present claimants had joined in a consent to the sale. In the instant case also all the stock was not sold. Nor did the present claimant, whose rights are now in controversy, consent. The fact that other claimants did not consent either does not seem to us to change the position of Burke. We think that Barbour v. Sproul is not only in point, but nearly on all-fours with this case.

To allow this claimant to recover in full, subject only to the obligation of paying off his loan, because his securities have survived the sale while others have not, seems to make the measure of his rights depend on luck rather than on an equitable plan of rateable distribution. So far as the appellant is concerned it is certainly clearly fortuitous that his securities were not sold instead of somebody else's, who also did business with Harding. But it is no more a matter of luck than the selection by the broker of the securities he wrongfully repledges. The appellees have cited us a large number of bankruptcy decisions [4] and a modern textbook authority [5] wherein

attempts have been made to work out an equitable system of distribution among all claimants in such instances. This effort was also made by the Special Master appointed by the District Court. We do not believe that in this case we are entitled to consider the merits of such plans. It is our duty to apply the law as settled by the courts of Pennsylvania. We think that the courts of Pennsylvania recognize the plaintiff's title to these securities and say that he is entitled to them or their value, subject only to the payment of what he owes the receivers. We follow that law as we find it.

The order of the court below is reversed.

---

[4] Of the cases cited in the appellees' brief on the point, all but three deal with bankruptcy matters. The difference in that situation is too obvious to be labored. Of the three, one is Barbour v. Sproul, 239 Pa. 171, 86 A. 714; another is a state court decision from Washington; the third a United States Supreme Court decision involving a federal stamp tax.

[5] Meyer, The Law of Stock Brokers and Stock Exchanges (1931). The Special Master followed the rules of contribution and classification as set out in this treatise.